UNITED STATES FEDERAL COURT FOR
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
COLLEEN DOOLAN ON BEHALF OF H.P. JR.,
A MINOR CHILD,                                                    **VERIFIED COMPLAINT**
                                    Plaintiff,

           -against-                                             **JURY TRIAL IS DEMANDED**

MONTICELLO CENTRAL SCHOOL
DISTRICT,
                                    Defendant.
-------------------------------------------------------------X

      Plaintiff, by and through their attorneys, Meth Law Offices, PC, alleges for their complaint as

follows:

## PRELIMINARY STATEMENT AND NATURE OF THE ACTION

      1.     This is a civil action brought by the Plaintiff against Defendant for violation of

Plaintiff's civil rights.

      2.     This action seeks to recover damages sustained by the Plaintiff H.P. Jr., as a result of

the school's failure of security, failure to adhere to federal American with Disabilities Act guidelines,

failure to follow their own 504 plan, failure to follow their own policies and procedures, and other

negligent administration that resulted in severe and brutal damages being inflicted upon H.P.

## JURISDICTION AND VENUE

      3.     This is a civil action brought by the Plaintiff against Defendant under 42 U.S.C.

Section 1983; 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the

Constitution and Laws of the United States.  Jurisdiction is proper over the Plaintiff's claims under 28

U.S.C. §§ 2201 and 2202 because the Plaintiff seeks a declaration of civil rights. This Court has

supplemental jurisdiction over the Plaintiff's related state law claims under 28 U.S.C. § 1367(a)

because those claims arise out of the same cause or controversy as the Plaintiff's Federal law claims.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because one or more of the Defendants reside within the Court's judicial district and all of the events giving rise to the claims occurred within the judicial district.

## THE PARTIES

5.      Plaintiff H.P. JR. (" H.P.") is a minor child who attended high school within Defendant Monticello Central School District at the time of the assault.

6.      Plaintiff COLLEEN DOOLAN ("Plaintiff Doolan") is the mother of Plaintiff H.P. JR., a minor child.

7.      Defendant MONTICELLO CENTRAL SCHOOL DISTRICT ("the Defendant District") contains the school in which H.P. attended and where the Plaintiff's alleged incidents occurred.

## STATEMENT OF FACTS

8.      Plaintiff H.P., is a minor child and high school student within the Defendant District. During the 2020-2021 and 2021-2022 school years, H.P. was the victim of relentless, incessant verbal and physical bullying at the hands of another student, N.W., and his friends, and a person who previously graduated from the school, identified as "Z.", N.W. and Z are related. The Defendant District blatantly knew that H.P. was being threatened and was not safe on their school property. Plaintiff Doolan notified them many times of this at school administration meetings, yet the school failed to protect H.P. The school had no protection safety plan in place for H.P., nor any warnings or restrictions to keep N.W. away from H.P. On February 7, 2022, N.W. viciously assaulted H.P. in his music class on the Defendant Districts school property, with no one there to protect him and no security in place.

The 2020-2021 School Year

9.      During the 2020-2021 school year, Z regularly came to the school when school dismissed and stood right outside the doors, waiting to see friends and to threaten and harass H.P. Every day, H.P. walked directly to his bus from his classroom but was frequently berated and threatened by Z during his walk to the bus. Z and her friends did not have permission to be on the school property. There was no school security monitoring unauthorized visitors outside of the school on the school property.

10.     In or about the spring of 2021, the end of the school year, a group of students– Z's friends–threatened Plaintiff Doolan to keep H.P. home from school or H.P. would be tased and threatened during school. One of H.P.'s friends had already gotten tased in the school.

11.     The Plaintiff did not know these students or Z, had no willful contact with them, and H.P. actively sought to avoid them during and after school.

12.     Out of fear of being tased, H.P. stayed home from school one day; H.P. told Plaintiff Doolan that he did not feel safe and he was frightened and she agreed that he should stay home. That same day, another student was tased by Z on the Defendant District's school's property– right outside the school's front door, without any school security present.

13.     After the tasing incident, Z and her friends continued to come to the school after classes ended and stood in front of the school, on the school grounds, to threaten H.P. on his way out of school. There was still no school security available to observe Z and her friends terrorizing H.P.

The 2021-2022 School Year

14.     In September 2021, H.P. entered ninth grade at the school within the Defendant District. H.P. had an Individualized Education Program (IEP) for a learning disability, his tests would have to be read to him. H.P. is very bright, a good student with good grades, making honor roll.

15.     Beginning in October 2021, H.P. felt unsafe because, although he had no negative interactions with N.W. or any other student at this time, many students came up to H.P. on a regular basis asking if he "was really H.P." because they or another student wanted to fight him. Plaintiff Doolan repeatedly verbalized her concerns to the principal, guidance counselor and social worker who dismissed them. Every time a student threatened H.P., he told Plaintiff Doolan, and Plaintiff Doolan would set up a meeting with the school administration. The administration offered no solutions to H.P.'s threats except that a security guard would "watch" him and he would be perfectly safe. That did not happen. There were no warnings or restrictions in place to keep N.W. away from H.P.

16.     Plaintiff Doolan stressed to the school administration her desire for H.P. to begin full time remote learning due to the ongoing threats and that H.P. did not feel safe. However, the principal and the guidance counselor continuously stated that online learning was not an option because he did not have COVID. Plaintiff Doolan pleaded numerous times with the school administration to please help to protect her son. She also wrote a letter to the superintendent.

17.     H.P.'s guidance counselor stated that he was welcome in her office anytime he felt unsafe, but she was rarely in her office. When H.P. attempted to go there when he did not feel safe, her office was empty and locked.

18.     H.P. never spoke with the school's principal or social worker privately about his concerns. H.P. would meet with the guidance counselor once a week for ten minutes and he let her know that he was being threatened by students that he did not know.

19.     Days later, H.P. was brutally assaulted and verbally humiliated in music class by N.W. with approximately four other students recording this horrific assault on their phones.

20.     H.P. shared first period with N.W., H.P. did not know N.W., had never spoken to N.W., had never heard of N.W., and never interacted with N.W., who is related to Z.

21.     H.P. and N.W. were in the same first period class in school but did not have other classes together and H.P. did not see N.W. during school hours after first period. Prior to the assault, there was never a time that H.P. saw N.W. during school hours except for first period. They did not ever speak or interact with each other during first period, or at all, prior to N.W.'s assault against H.P.

22.     On February 7, 2022, H.P. saw N.W. in first period and did not speak to him, as usual. After that period ended, H.P. continued his school day normally, going to gym, math, library, computer studies, and lunch. During seventh period, H.P. was in music class in the school's music room. He was seated, working on school work assigned by the teacher. In the police report it says that twenty children were standing outside of the classroom surrounding the music classroom door.

23.     In violation of Defendant District's security policies and procedures, student N.W. failed to obtain permission to enter the hallway between periods and was neither monitored or supervised by the Defendant District, its agents, servants, designees and/or employees before or during the time that he entered the music classroom where Plaintiff H.P. was present.

24.     Approximately 15 minutes into the music class, a student, W, walked into the classroom and walked up to H.P. as he was seated at his desk doing his work, moved a chair out of the way in front of H.P., pulled out his phone, and began video recording H.P. Behind W, N.W. and approximately four other students walked into the classroom and walked in front of H.P. W and the four other students stood around H.P. and began video recording him with their phones. N.W. and the four other students were not in H.P.'s class and were not supposed to be in the music classroom at the time of the assault.

25.     Approximately one second after they began recording, N.W. began brutally beating H.P. with his closed fists. N.W. punched H.P. in his face approximately 30 times; hit him in the cheekbones; hit the front and back of his head; he was hit in the nose; he was punched in both sides

of his face while his head was down trying to protect himself; punched, kicked, and kneed in his back. N.W. grabbed H.P.'s head and kneed him in the face, smashing his head to his knee as hard as he could hitting his lip and nose. Every time H.P. attempted to get up out of his seat and escape, N.W. verbally abused him using racist degrading language, and would continue to grab, punch and knee him. N.W. picked him up and slammed H.P., throwing him on his back on the floor. This appalling brutality finally ended by N.W. picking up H.P. again and throwing him into the instruments that were organized in the classroom.

26.     N.W. sought out H.P. after first period during school hours, and launched a brutal and unprovoked physical attack against H.P. inside of the school, as H.P. innocently sat in his chair at his desk doing his school work. After N.W. finished physically assaulting H.P., he walked out of the classroom, screaming horrible profanities and calling H.P. demeaning  names and threatening him, including, but not limited to the following: "Bitch," "Pussy," and "I can't wait until I see you outside."

27.     No student or teacher said anything to H.P. during or after the assault, they just watched. Everyone present in the classroom just stared at H.P., and some laughed at what happened. No student, teacher, security guard, or other faculty attempted to stop the assault, including the music teacher who was in the classroom. There was no security in the halls, which allowed N.W. and his friends to roam the school freely during class time and enter H.P.'s classroom. Police Officer Leon later told H.P. that his attack was brutal, that he should have never been touched, that H.P. is the victim, that this was not his fault, and someone should have stepped in and helped him.

28.     H.P. was left paralyzed in shock, fear, pain and complete agony. He some how was able to gather his personal items that were scattered during the assault and he left the classroom. The teacher said nothing to H.P. and did not attempt to stop him from leaving the classroom.

29.     Out of fear, H.P. left the classroom, ran up the stairs in hopes of obtaining the

assistance of a safety officer, hall monitor, teacher or any other employee of the Defendant District. However, there were no security guards, hall monitors, or other agents, servants, designees and/or employees present in the hallways to provide security and protection of the Defendant District's students, particularly Plaintiff H.P.

30.    Out of overall terror, Plaintiff H.P. ran from the front doors of the school and ran on foot home. No security guards, hall monitors, or other agents, servants, designees and/or employees stopped, attempted to stop, or even noticed that Plaintiff H.P. left the school.

31.    When H.P. got home, he ran into the house with blood dripping down his face coming from his lip, he was sweating, screaming and yelling. He had bruising all over his back with bumps sticking out. He told Plaintiff Doolan what happened, and Plaintiff Doolan called the police. Just as H.P. got home, Plaintiff Doolan received a screen shot of the attack on her phone. The police arrived and took pictures of H.P.'s injures.

32.    While the police were still at H.P.'s house, videos of the assault started circulating. H.P. and Plaintiff Doolan received videos of the assault from family members outside of the area and form random students at different schools. The police took copies of the videos.

33.    H.P. was then taken to Garnet Health Medical Center, Catskills for treatment. After the assault N.W. was suspended for two weeks and was put on probation. H.P. had an order or protection against N.W. If N.W. did well and did not interact with H.P., N.W. would be taken off of both.

34.    N.W. knows the Plaintiff's home address and regularly walks through Plaintiff H.P.'s neighborhood and continues to approach his home, screaming H.P.'s name, cursing at him, and calling him disparaging names and threatening him. Plaintiff Doolan saw N.W. by her home picking up a gun that fell out of a girl's pocket and putting the gun into his pocket.

35.     After the assault, H.P. made enumerated complaints to the police due to N.W.'s relentless and ongoing death threats against H.P. from N.W., his cousins, and his family. A woman related to N.W. told H.P. that he needed to "learn to fight" and N.W. and his friends told H.P. and other students that they were going to "kill" H.P.

36.     Since that incident occurred, H.P. has lived in fear for his safety and well-being. N.W. knows his address and stalks his house, terrorizing him with threats outside. N.W. sometimes brings up to ten other people with him, wearing ski masks, to H.P.'s house to scream at him, threaten him, and try to fight him. H.P. does not engage and stays in his home, afraid to leave at all times.

37.     H.P. has not left his house to play outside or see friends since the attack due to his fear from the assault and ongoing threats of trepidation.

38.     As a result of the assault, H.P. was left with a severe concussion, dozens of broken blood vessels, swelling inside of his back, bumps outside of his back, his tailbone pops out, a fat lip, bruised cheekbones, a black eye, nose swelling, and constant headaches. H.P. continues to suffer from headaches, and lower back pain that goes down to his right leg, he will cry in pain.  H.P. has had physical therapy treating his back and leg pain which hurts if he walks for a long period of time, and treating his eyes, head and entire body. Bright lights hurt his eyes if he is by a window or outside or if he watches television for too long.

39.     H.P. was diagnosed with post traumatic stress disorder and depression following the assault and was prescribed anti-depressants. H.P. has suffered extreme physical and psychological damages that may never be repaired.

40.     H.P. followed up at the hospital and with different out-patient doctors since the assault due to ongoing pain. H.P. required physical therapy and medication to treat his injuries.

41.     H.P. also began seeing a mental health counselor at Synergy, Jen, to directly treat his

trauma caused by the assault in addition to the regular mental health counselor H.P. had been seeing at Synergy prior to the assault. H.P. tells Jen that he doesn't want to go outside because of what happened, that everyone saw the fight and it is embarrassing. Jen recommended that H.P. not go back to the school.

42.     Following the assault, H.P. never went back to the school. He never spoke to the students from the school again after the day of the assault. H.P. immediately began virtual schooling and had an in-person tutor come to his home five days per week. Regardless of the attack, H.P. finished ninth grade making honor roll.

43.     A few days after the assault, the Plaintiff had a meeting with school administration including the principal, guidance counselors, and an advocate assigned to H.P.

44.     H.P. has not been in school for the 2022-2023 school year nor has he received remote learning, nor a tutor, nor an alternative education plan with text books and a syllabus and no CSE meeting has been scheduled. The school has not set up a meeting to discuss H.P.'s return to school safety plan, even though Plaintiff Doolan has requested all of this several times, she has not once received a response from the school. H.P. is entitled to receive an education.

45.     The school was supposed to contact Plaintiff Doolan in regards to H.P. going back to school and they have not. H.P. wants to go to regular in person school, but he does not feel safe anymore.

46.     The Defendant District's School Resource Officer failed to "help provide a safe and secure learning environment, foster a positive school climate, [and] reduce/prevent crime," in violation of the Defendant District's 2022-2023 official Code of Conduct.

47.     The Defendant District's school principal and school resource officer failed to "discuss plans and strategies to address specific issues or needs that may arise" following the Plaintiff's repeated

requests for help, in violation of the Defendant District's 2022-2023 official Code of Conduct.

48.     The Defendant District's School Resource Officers failed to "provide classroom instruction on a variety of topics including, but not limited to, safety, public relations, occupational training, leadership, and life skills," in violation of the Defendant District's 2022-2023 official Code of Conduct.

49.     The Defendant District's School Resource Officers failed to "be a part of the Threat Assessment Response Team on initial reports of threats to or on campus/buildings" to protect H.P., in violation of the Defendant District's 2022-2023 official Code of Conduct.

50.     The Defendant District's School Resource Officers failed to "take enforcement action on criminal matters when appropriate and after consultation with school," in violation of the Defendant District's 2022-2023 official Code of Conduct.

51.     The Defendant District's high school principal failed to "Maintain a climate of mutual respect, safety, and dignity for all people regardless of actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender/gender identity or expression, or sex, which is required to promote teaching and learning," in violation of the Defendant District's 2022-2023 official Code of Conduct.

52.     The Defendant District's high school principal failed to "participate in school-wide efforts to provide adequate supervision in all school spaces," in violation of the Defendant District's 2022-2023 official Code of Conduct.

53.     The Defendant District's high school principal failed to "be responsible for enforcing the Code of Conduct and ensuring that all cases are resolved promptly and fairly," in violation of the Defendant District's 2022-2023 official Code of Conduct.

54.     The Defendant District's high school principal failed to "address issues of harassment

or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function," in violation of the Defendant District's 2022-2023 official Code of Conduct.

55.     The Defendant District's high school principal failed to "promote a trauma-informed approach to addressing student behavior by supporting professional development, providing safe work environments, forming trusting relationships with students, allowing for student choice and autonomy, and encouraging student skill-building and competence," in violation of the Defendant District's 2022-2023 official Code of Conduct.

56.     The Defendant District's Superintendent failed to "Maintain a climate of mutual respect, safety, and dignity for all students regardless of actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender/gender identity or expression, or sex, which will strengthen students' self-concept and promote confidence to learn," in violation of the Defendant District's 2022-2023 official Code of Conduct.

57.     The Defendant District's Superintendent failed to "Promote a safe, orderly, and stimulating school environment, supporting active teaching and learning," in violation of the Defendant District's 2022-2023 official Code of Conduct.

58.     The Defendant District's Superintendent failed to "Work to create instructional programs that minimize problems of inappropriate behavior and are sensitive to student and teacher needs," in violation of the Defendant District's 2022-2023 official Code of Conduct.

59.     The Defendant District's Superintendent failed to "Work with district administrators in enforcing the Code of Conduct and ensuring that all cases are resolved promptly and fairly," in violation of the Defendant District's 2022-2023 official Code of Conduct.

60.     The Defendant District's Superintendent failed to "Communicate regularly with

students, care givers, teachers, administrators, and pupil personnel staff concerning student growth and achievement," in violation of the Defendant District's 2022-2023 official Code of Conduct.

61.     The Defendant District's Superintendent failed to "Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function," in violation of the Defendant District's 2022-2023 official Code of Conduct.

62.     The Defendant District's Superintendent failed to "Promote a trauma-informed approach to addressing student behavior by supporting professional development and appropriate staffing," in violation of the Defendant District's 2022-2023 official Code of Conduct.

63.     The Defendant District's Board of Education failed to "Promote a safe, orderly, and stimulating school environment, supporting active teaching and learning for all students regardless of actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender or sex," in violation of the Defendant District's 2022-2023 official Code of Conduct.

64.     The Defendant District's Board of Education failed to "Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function, and report incidents of discrimination and harassment that are witnessed or otherwise brought to the attention of the Board member, to the building administrator who is acting as the Dignity Act Coordinator, in a timely manner," in violation of the Defendant District's 2022-2023 official Code of Conduct.

65.     The Defendant District's Board of Education failed to "Address personal and educational biases that may prevent equal treatment of all students and staff, care givers/guardians, other personnel and the community," in violation of the Defendant District's 2022-2023 official Code

of Conduct.

66.     The Defendant District failed to "act to promptly investigate all complaints, verbal and written, formal or informal, of allegations of discrimination, harassment, bullying and retaliation, and will promptly investigate all complaints, verbal or written, formal or informal, of allegations of discrimination, harassment, bullying and retaliation, and will promptly take appropriate action to protect individuals from further discrimination, harassment, bullying," in violation of the Defendant District's 2022-2023 official Code of Conduct.

67.     The Defendant District failed to, "upon receipt of a complaint (even an anonymous complaint), or if a District employee otherwise learns of any occurrence of possible conduct prohibited by this Code, the district employee shall promptly and orally notify the appropriate building principal no later than one school day after such employee witnesses or receives the complaint or learns of such conduct. Such an employee should file a written report with the appropriate building principal no later than one school day after such employee witnessed or received the complaint or learned of such conduct. Such employee shall also file a written report with the appropriate building Dignity Act Coordinator no later than two days after making such oral report," in violation of the Defendant District's 2022-2023 official Code of Conduct.

68.     The Defendant District failed to "lead or supervise a thorough investigation of the alleged discriminatory, harassing, bullying, or retaliatory conduct. The appropriate building principal or that person's designee shall ensure that such investigation is completed promptly and in accordance with the terms of this Code. All complaints shall be treated as confidential and private to the extent possible within legal constraints," in violation of the Defendant District's 2022-2023 official Code of Conduct.

69.     The Defendant District's Dignity Act Coordinators failed to "Promote a safe,

supportive, orderly, and stimulating school environment, supporting active teaching and learning for all students regardless of actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender or sex," in violation of the Defendant District's 2022-2023 official Code of Conduct.

70.     The Defendant District's Dignity Act Coordinators failed to "Oversee and coordinate the work of the District-wide and building-level bullying prevention committees," in violation of the Defendant District's 2022-2023 official Code of Conduct.

71.     The Defendant District's Dignity Act Coordinators failed to "Identify curricular resources that support infusing civility in classroom instruction and classroom management and provide guidance to staff as to how to access and implement those resources," in violation of the Defendant District's 2022-2023 official Code of Conduct.

72.     The Defendant District's Dignity Act Coordinators failed to "Be responsible for monitoring and reporting on the effectiveness of the District's anti-bullying, harassment & discrimination policy/dignity for all students act policy," in violation of the Defendant District's 2022-2023 official Code of Conduct.

73.     The Defendant District's Dignity Act Coordinators failed to "Address issues of discrimination and harassment, or any situation that threatens the emotional or physical health or safety or any student, school employee, or any person who is lawfully on school property or at a school function," in violation of the Defendant District's 2022-2023 official Code of Conduct.

74.     The Defendant District's Dignity Act Coordinators failed to "Address personal biases that may prevent equal treatment of all students and staff," in violation of the Defendant District's 2022-2023 official Code of Conduct.

75.     The Defendant District's Dignity Act Coordinators failed to "Respond to any reports

of bullying, harassment, or discrimination," in violation of the Defendant District's 2022-2023 official Code of Conduct.

76.     The Defendant District's School related professional staff failed to "Maintain a climate of mutual respect and dignity for all students regardless of actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender or sex," in violation of the Defendant District's 2022-2023 official Code of Conduct.

77.     The Defendant District's School related professional staff failed to "Help children understand the district's expectations for maintaining a safe, orderly environment," in violation of the Defendant District's 2022-2023 official Code of Conduct.

78.     The Defendant District's School related professional staff failed to "Participate in school-wide efforts to provide adequate supervision in all school spaces," in violation of the Defendant District's 2022-2023 official Code of Conduct.

79.     The Defendant District's School related professional staff failed to "Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function," in violation of the Defendant District's 2022-2023 official Code of Conduct.

80.     The Defendant District failed to follow its appropriate "Levels of Behavior Concerns, Violations, and Responses" policy for grades 3-12, in violation of the Defendant District's 2022-2023 official Code of Conduct.

81.     The Defendant District failed to follow its appropriate "Responses and Intervention" policy for grades 3-12, in violation of the Defendant District's 2022-2023 official Code of Conduct.

82.     The Defendant District failed to follow its "Disciplinary Responses, Procedures and Referrals" policy, in violation of the Defendant District's 2022-2023 official Code of Conduct.

83.    The Defendant District failed to follow its "Visitors to the School" policy, in violation of the Defendant District's 2022-2023 official Code of Conduct.

84.    The Defendant District failed to follow its "Public Conduct of School Property" policy, in violation of the Defendant District's 2022-2023 official Code of Conduct.

## AS AND FOR A FIRST CAUSE OF ACTION FOR FAILURE FOR VIOLATIONS OF TITLE II OF THE AMERICAN DISABILITIES ACT

85.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 84, inclusive, with the same full force and effect as if fully set forth herein.

86.    Plaintiff H.P. is a qualified individual with a disability, having an IEP Plan (Individualized Education Program) within the Defendant District.

87.    The bullying, harassment and physical assault that Plaintiff H.P. endured on the Defendant District's property has left him frightened to attend school.

88.    Plaintiff H.P.'s education has been continuously disrupted with victimization, mistreatment and suffering, uninterrupted and unaddressed by the Defendant District.

89.    The bullying, harassment and physical assault Plaintiff H.P. sustained was so severe and extensive that it caused a hostile school environment for him. That, by reason of the foregoing, Plaintiff H.P. was deprived of the educational opportunities that he was entitled to.

90.    The Defendant District, with knowledge of the bullying and harassment, did nothing to rectify or stop the bullying or harassment. The Defendant acted with deliberate indifference to the bullying and harassment by failing to punish and discipline those responsible.

91.    The Defendant whom, upon information and belief, are a public entity, allowed H.P.'s educational experience to be compromised because of the bullying, harassment, and tormenting, therefore, depriving him of a full and equal educational opportunity and experiences. The Defendant

failed to create a safe learning environment for H.P. That, by reason of the foregoing, the Defendant failed to actively comply with Title II of the Americans with Disabilities Act.  Plaintiff has been removed from main stream school and is now at a BOCES program while the perpetrator of the assault and the other students as alleged herein remain in the main stream school district program severely and detrimentally affecting Plaintiff's ability to get an education, causing damage in an amount to be determined at trial.

<u>**AS AND FOR A SECOND CAUSE OF ACTION FOR NEGLIGENCE**</u>

92.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 91, with the same force and effect as though fully set forth herein.

93.     At all times relevant to the claims in this matter, the Defendant District includes agents, servants, designees and/or employees of Defendant District and maintained, as a result of that official status, a special relationship with Plaintiff H.P.

94.     At all times relevant to the claims in this matter, the Defendant District, as state actors, and as administrators of a school that was acting *in loco parentis* with regard to Plaintiff H.P., the Defendant District had a duty to protect Plaintiff H.P. and provide an environment of care and safety in which to attend the public school and safely travel throughout the premises including, but not limited to walking the hallways.

95.     Since the enactment on the New York State Dignity for All Students Act (herein "DASA") in July 2010, a legal duty has been placed on all public schools to ensure a safe environment for all students, free from harassment. As such, the Defendant had a "special duty" to protect Plaintiff H.P. from harassment and violence both prior and following the February 7, 2022 assault.

96.     DASA also enacted numerous mandatory requirements regarding investigations and reporting of harassment that were simply not followed by the Defendant District. As such, the

Defendant had a "special duty" to protect Plaintiff H.P.

97.    The Defendant was required to supervise, protect and adhere to established school policy via New York State Education Laws such as DASA.

98.    The District Defendant: 1) failed to discipline student N.W. in any way; 2) failed to follow the District Defendant's own established procedures and policies regarding assault and supervision of students; and 3) failed to follow DASA mandatory polices and procedures regarding harassment, investigation and reporting.

99.    Not only was the Defendant and its agents aware of their duty to Plaintiff H.P., but were statutorily required to properly investigate, report and take disciplinary actions against any perpetrator of DASA as well as safeguard students under Defendants' care from any such assaults.

100.    The Defendant District was deliberately indifferent to the physical and psychological well-being of Plaintiff H.P. contrary to the Defendants' policies and DASA.

101.    The duty of the Defendant to protect Plaintiff H.P. and provide an environment of care and safety was further heightened by the Defendant's ongoing awareness of complaints and concerns raised to the Defendant District, its agents, servants, designees and/or employees by the Plaintiff.

102.    The Defendant District was obligated while sitting *in loco parentis* over students in their care, custody and control, to protect Monticello High School students' rights to substantive due process, personal security, bodily integrity and the right to be protected, particularly Plaintiff H.P.

103.    The Defendant was negligent, grossly negligent, careless and/or reckless, in failing to properly supervise its students, and failing to properly train teachers and staff as to methods of supervision and how to protect their students.

104.    Said recklessness and/or negligence thus provided the opening and/or opportunity for student N.W. to roam the school's hallway without authorization and at a time when class was in

session for the purpose of intimidation, harassment, and assaultive behavior on Plaintiff H.P.

105.    Without any provocation, permission, or notice from Plaintiff H.P, student N.W. proceeded to assault, bully, taunt, follow, stalk and refer to Plaintiff H.P. by names that implied sexual orientation animus, such as "Pussy." Such acts occurred during classroom hours wherein Plaintiff H.P. had a reasonable expectation to be free from unlawful battery, assault, false imprisonment, physical and psychological harm, wrongdoing, illegality, and harmful contact; furthermore, Plaintiff H.P. had a reasonable expectation to be afforded a reasonable degree of safety and security by the Defendants, who endeavored to employ various security measures including but not limited to classroom teachers, hall monitors and/or security guards in and around the school building.

106.    The Defendant District failed to meet the obligations within the Defendant District's Code of Conduct and supervise student N.W., a student known to have a history and/or propensity for violence, prior to his targeted assault of Plaintiff H.P. on February 7, 2022.

107.    Plaintiff H.P. had a right to be free in his person from assault, battery and harassment and had a constitutional right to bodily integrity. The duty of the Defendant to secure and protect this right was clearly established.

108.    The aforementioned failures of the Defendant to secure, protect and provide these rights to proper supervision and safety in the school environment, in addition to their failure to adequately prevent and respond to violence by and between students, amounted to a deliberate indifference to the clearly established rights of Plaintiff H.P.

109.    By its recklessness, disregard, inaction and failures, the Defendant District intentionally, and/or with gross negligence, failed to provide reasonable conditions of safety and bodily integrity that rose to the level of deliberate indifference for the harm and violations visited on Plaintiff H.P.

110.    As a result of the pattern and practice by the Defendant District, its agents, servants,

designees and/or employees, of concealing criminal activity and racially motivated attacks, including bullying, harassment, discrimination, battery and assault, at Monticello High School, retaliating against those who seek the outside intervention of law enforcement agencies, and the indifferent treatment of harassment, discrimination, and assault, minority students and the parents of minority children, Plaintiff H.P. was the victim of a vicious assault.

111.    Plaintiff H.P. suffered serious and debilitating bodily injury, including but not limited to a severe concussion; the loss of consciousness; pain; agitation; subjected to an unsafe school environment saturated with continued bullying and harassment; dizziness; ongoing headaches; ongoing back pain; broken blood vessels, bruised cheekbones, nose, eyes, and face; vision-loss and severe emotional pain and suffering that continues to this day. Plaintiff H.P. was forced to undergo swift medical treatment, multiple CAT scans, repeated follow ups and evaluations and, as a result, suffered scarring and permanent injury actually and proximately caused by the Defendants' negligence.

112.    Plaintiff H.P. suffered embarrassment; fear; permanent emotional and mental distress; post traumatic stress disorder; loss of his right to a free and public education; loss of his right to an educational setting free from bullying, harassment, intimidation, and discrimination, a violation of his civil rights; and was physically and psychologically injured as result of the negligence and/or deliberate indifference of the Defendant.

113.    That, by reason of the foregoing reckless, negligent and culpable conduct of the Defendant, Plaintiff H.P. will permanently suffer from the effects of his aforesaid injuries and will be caused to suffer permanent embarrassment and continuous pain and inconvenience.

114.    That, by reason of the foregoing, Plaintiff H.P. was compelled and did necessarily require emergency and other medical aid and attention and did necessarily pay and become liable therefore for costs associated with his treatment, medicines and similar expenses.

115.    That by reason of the foregoing, Plaintiff H.P. suffered and continues to suffer irreparable injury and monetary damages in an amount to be determined at trial as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**AS AND FOR A THIRD CAUSE OF ACTION FOR FAILURE TO PROTECT**

116.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 115, inclusive, with the same force and effect as though fully set forth herein.

117.    Plaintiff H.P. had a right to be free in his person from assault, battery and harassment and had a constitutional right to bodily integrity while at the Defendant school as mandated by law. The duty of the Defendant to secure and protect this right was clearly established.

118.    The aforementioned failures of the Defendant District and its employees and agents to secure, protect and provide these rights to proper supervision and safety in the school environment, in addition to their failure to adequately prevent and respond to violence by and between students, amounted to a deliberate indifference to the clearly established rights of Plaintiff H.P.

119.    As a result of the pattern and practice by the Defendant District, its agents, servants, designees and/or employees, of concealing criminal activity and attacks, including bullying, harassment, discrimination, battery and assault, at Monticello High School, retaliating against those who seek the outside intervention of law enforcement agencies, and the indifferent treatment of harassment, discrimination, and assault, minority students and the parents of minority children, Plaintiff H.P. was the victim of a vicious assault.

120.    Plaintiff H.P. suffered serious and debilitating bodily injury, including but not limited to a severe concussion; the loss of consciousness; pain; agitation; subjected to an unsafe school environment saturated with continued bullying and harassment; dizziness; ongoing headaches; ongoing back pain; broken blood vessels, bruised cheekbones, nose, eyes, and face; vision-loss and severe

emotional pain and suffering that continues to this day. Plaintiff H.P. was forced to undergo swift medical treatment, multiple CAT scans, repeated follow ups and evaluations and, as a result, suffered scarring and permanent injury actually and proximately caused by the Defendants' negligence. Plaintiff suffered embarrassment, fear, mental distress, loss of his right to a free and public education, loss of his right to an educational setting free from bullying, harassment, intimidation, and discrimination, a violation of his civil rights, and was physically and psychologically injured as result of the negligence and/or deliberate indifference of the Defendants.

121.    That, by reason of the foregoing willful, reckless, negligent and culpable conduct of the Defendants, Plaintiff H.P. will permanently suffer from the effects of his aforesaid injuries and will be caused to suffer permanent embarrassment and continuous pain and inconvenience.

122.    That by reason of the foregoing, Plaintiff suffers and continues to suffer irreparable injury and monetary damages in an amount to be determined at trial as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION FAILURE TO ADHERE TO ESTABLISHED POLICY

123.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 122, inclusive, with the same force and effect as though fully set forth herein.

124.    At all times relevant to the claims in this matter, the Defendant, as state actors, had a duty to protect Plaintiff H.P. and provide an environment of care and safety in which to attend the public school and safely travel throughout the premises including, but not limited to walking the hallways.

125.    The Defendant was required to supervise, protect and adhere to established school policy via New York State Education Laws such as DASA.

126.     Not only was the Defendant aware of its duty to Plaintiff H.P., but it was statutorily required to properly investigate, report and take disciplinary actions against any perpetrator of DASA as well as safeguard students under the Defendant's care from any such assaults.

127.     The Defendant was deliberately indifferent to the physical and psychological well-being of Plaintiff H.P. contrary to the Defendant's policies and DASA.

128.     The duty of the Defendant to provide an environment of care and safety was further heightened by the Defendant's ongoing awareness of complaints and concerns raised to the Defendant District, its agents, servants, designees and/or employees by the Plaintiff.

129.     The Defendant was also required under the Defendant District's code of conduct, along with the Defendant District's duties while sitting *in loco parentis* over Plaintiff H.P. to protect Monticello High School students' rights to personal security, bodily integrity and the right to be protected, particularly Plaintiff H.P.

130.     According to the Defendant District's code of conduct, as well as the Defendant's duties while sitting "in loco parentis" over Plaintiff H.P., the Defendant District was obligated to create a program geared towards preventing bullying, decreasing the number of instances of bullying and helping students build a more supportive relationship with each other by integrating a bullying prevention program into classroom instruction prior to the attack on Plaintiff H.P.

131.     Furthermore, the Defendant District was obligated to designate a Dignity Act Coordinator to assist in overseeing and enforcing the Defendant District's established anti-bullying policy. The Defendant District, however, failed to implement and maintain this anti-bullying program prior to the targeted bullying and assault on Plaintiff H.P.

132.     Due to the Defendant District's failure to abide by its established security policies and procedures, student N.W. was allowed to roam the hallways without authorization or supervision from

the Defendant District, its designees, agents, servants, designees and/or employees while class was in session. As a result, student N.W. was given the opportunity to violate the Defendant District's Code of Conduct by attacking, bullying, taunting, stalking, harassing and seriously and permanently injuring Plaintiff H.P.

133.    Due to the Defendant District's failure to abide by its established security policies and procedures, no teachers, support staff, safety officers and/or other security personnel were properly stationed in the hallways and entrance-ways on the floor of the Monticello High School's music room or the front door to provide security and protection of its students, including Plaintiff H.P.

134.    The Defendants failed to fulfill their obligations, as agents, servants, designees and/or employees of the Defendant District, to address issues of harassment and "report incidents of discrimination and harassment witnessed by or brought to the teacher's attention in a timely manner to the principal or another building administrator." As a result, student N.W. was able to pursue Plaintiff H.P. into the school's music room while class was in session and strike him with such force that Plaintiff was knocked unconscious, and left in a debilitating condition.

135.    The Defendants breached their duty to notify the appropriate local law enforcement agency of student N.W.'s violation "no later than the close of business the day the building principal or his/her designee learns of the violation" although student N.W.'s attack on a Monticello High School student specifically targeted Plaintiff H.P., and student N.W. seriously injured Plaintiff H.P.

136.    The Defendant breached this duty by making material misrepresentations about the seriousness of the injury and details of the incident, failing to know the assault occurred when it did, failing to know that Plaintiff H.P. left school property while under the Defendant's care and control to run home for help, and by failing to provide any justification as to why the Defendant failed to notify the Sullivan County Police Department or any other law enforcement agency.

137.     The Defendant breached its duty to expeditiously conduct an investigation into the brutal, targeted assault on Plaintiff H.P. by failing to provide Plaintiff Doolan with any documentation of the investigation when they continuously requested a report and a discussion of the remedial efforts that the Defendant took to address to the targeted bullying and assault on Plaintiff H.P.

138.     Although the Defendant had specific notice or knowledge of the ongoing bullying and assault on Plaintiff H.P., and its heightened duty to protect students from such violence, it continued to disregard the above obligations to provide a safe learning environment free of discrimination, harassment and bullying, as per the Defendant District's Code of Conduct and its duties while sitting *in loco parentis* over Plaintiff H.P.

139.     The aforementioned failures of the Defendant to secure, protect and provide these rights to proper supervision and safety in the school environment, in addition to their failure to adequately prevent and respond to violence by and between students, amounted to a deliberate indifference to the clearly established rights of Plaintiff H.P.

140.     By its actions, inactions and failures, the Defendant failed to provide reasonable conditions of safety and bodily integrity that rose to the level of deliberate indifference for the harm and violations visited on Plaintiff H.P.

141.     That, by reason of the foregoing reckless, negligent and culpable conduct of the Defendant, Plaintiff H.P. will permanently suffer from the effects of his aforesaid injuries and will be caused to suffer permanent embarrassment and continuous pain and inconvenience.

142.     That, by reason of the foregoing, Plaintiff H.P. was compelled and did necessarily require emergency and other medical aid and attention and the Plaintiff did necessarily pay and become liable therefore for costs associated with Plaintiff H.P.'s treatment, medicines and similar expenses.

143.     That by reason of the foregoing, the Plaintiff suffered and continue to suffer irreparable

injury and monetary damages in an amount to be determined at trial as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION

144.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 143, inclusive, with the same force and effect as though fully set forth herein.

145.    The District Defendant had physical custody of and control over Monticello High School students at all times relevant to this Complaint. Consequently, the Defendant was obligated to provide an environment of care and safety in which to attend the public school and safely travel throughout the premises including, but not limited to walking the hallways.

146.    The Defendant had a duty to notify the appropriate emergency services in the event that a Monticello High School District student is seriously injured.

147.    The Defendant breached this duty by making material misrepresentations about the seriousness of the injury and details of the incident, having no knowledge that the assault occurred when it did, having no knowledge that Plaintiff H.P. fled the classroom and the school in fear after the assault, and by failing to provide any justification as to why Defendants failed to notify the Sullivan County Police Department or any other law enforcement agency.

148.    The Defendant was negligent, reckless, and/or willfully indifferent to Plaintiff H.P.'s condition and refused to act and/or act appropriately under the circumstances thus causing further injury and exacerbation of existing injury to Plaintiff H.P.

149.    The negligence and/or recklessness of the Defendant was the proximate cause of the injuries suffered by Plaintiff H.P., without any negligence and/or recklessness on the part of Plaintiff H.P., contributing thereto.

150.    That, by reason of the foregoing reckless, negligent and culpable conduct of Defendant,

Plaintiff H.P. will permanently suffer from the effects of his aforesaid injuries and will be caused to suffer permanent embarrassment and continuous pain and inconvenience.

151.    That, by reason of the foregoing, Plaintiff H.P. was compelled and did necessarily require emergency and other medical aid and attention and did necessarily pay and become liable therefore for costs associated with Plaintiff H.P.'s treatment medicines and similar expenses.

152.    That, by reason of the foregoing, the Plaintiff suffered and continue to suffer irreparable injury and monetary damages in an amount to be determined at trial as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

153.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 152, inclusive, with the same full force and effect as if fully set forth herein.

154.    At all times relevant to the claims in this matter, the Defendant, as state actors, was required under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as well as their obligations while sitting *in loco parentis* over students in their care, custody and control, to protect Monticello High School students' rights to substantive due process, personal security, bodily integrity and the right to protected.

155.    The Defendant, should have known that its conduct of (I) failing to protect Plaintiff H.P. from an attack, harassment and bullying; (ii) refusing to call the police on Plaintiff H.P.'s behalf after he was viciously attacked and beaten by a student; (iii) taking no measures to protect Plaintiff H.P. from the attack; and (iv) failing to address the targeted motivation that was apparent in the aforesaid assault, constituted extreme and outrageous conduct, beyond the bounds of decency within a civilized society. Such conduct was extreme and outrageous.

156.    The Defendant knew or should have known that its conduct would cause extreme emotional distress to Plaintiff H.P. Yet, the Defendant continued with its course of conduct, and failed to remedy the extreme emotional distress that it knew and/or should have known was being visited upon Plaintiff H.P.

157.    The Defendant District, its agents, servants, designees and/or employees, of concealing criminal activity and targeted attacks, including bullying, harassment, discrimination, battery and assault, at Monticello High School, retaliating against those who seek the outside intervention of law enforcement agencies, and the indifferent treatment of targeted harassment, discrimination, and assault, minority students, Plaintiff H.P. was the victim of a vicious assault.

158.    That, by reason of the foregoing, Plaintiff H.P. was compelled and did necessarily require emergency and other medical aid and attention, and did necessarily pay and become liable therefore for costs associated with Plaintiff H.P.'s treatment, medicines and similar expenses.

159.    Plaintiff H.P. further suffered expenses and damages, associated with the medical care, along with psychological injuries including, severe and continuing emotional distress.

160.    That by reason of the foregoing, the Plaintiff suffered and continue to suffer irreparable injury and monetary damages in an amount to be determined at trial as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

161.    That by reason of the foregoing, the Plaintiff suffered and continue to suffer irreparable injury and monetary damages in an amount to be determined at trial as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

**WHEREFORE**, Plaintiff demands judgment against the Defendant:

a.      On the First Count in an amount to be determined at trial;

b.      On the Second Count in an amount to be determined at trial;

c.      On the Third Count in an amount to be determined at trial;

d.      On the Fourth Count in an amount to be determined at trial;

e.      On the Fifth Count in an amount to be determined at trial;

f.      On the Sixth Count in an amount to be determined at trial;

g.      Punitive damages in an amount to be determined at trial;

h.      Declaratory judgment that Defendant willfully violated Plaintiff's rights secured by federal and state law as alleged herein;

I.      Award such other and further relief as this Court may deem appropriate.


**A JURY TRIAL IS HEREBY DEMANDED**


Dated: October 13, 2022
       Chester, New York

Michael D. Meth, Esq.
Meth Law Offices, PC
*Attorneys for Plaintiff*
10 Moffatt Lane, Suite 2
P.O. Box 560
Chester, New York 10918
(845) 469-9529

<u>**VERIFICATION**</u>

STATE OF NEW YORK        )
                         ): ss
COUNTY OF SULLIVAN       )

Colleen Doolan, being duly sworn, deposes and says:

I am a Plaintiff and the mother of H.P., a minor child, in the within action; I have read the annexed Verified Complaint, know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true pursuant to the penalty of perjury.

Colleen Doolan

Sworn to before me this
13th day of October, 2022

Notary Public

MICHAEL D. METH
Notary Public, State of New York
Qualified in Orange County
Registration No. 02ME6006164
Commission Expires 07|16|26